Daniel G. Albert, J.
In these actions submitted upon agreed statements of facts, Robert Manufacturing Co., Inc. (hereinafter referred to as Robert) seeks a determination that it has a valid mechanic’s lien for moneys due on electrical fixtures sold to Vega Illumination Products, Inc. (hereinafter referred to as Vega) and delivered to Arc Electrical Construction Co., Inc. (hereinafter referred to as Arc). In a second action, Hempstead Bank, as assignee of Vega’s accounts receivable, sought to recover the sum of $15,711.60 from Arc and Arc interposed a counterclaim for $589.53 for an alleged breach of contract by Vega. Pursuant to court order, Arc was discharged from any liability after depositing certain moneys with this court. However, Arc’s counterclaim against Vega was severed and continued and is the subject matter of the second action.
The facts are simply set forth. A shopping center complex was under construction in Massapequa, New York, and one of the buildings to be constructed therein was a department store for R. H. Macy & Co. James King & Son, Inc., the general contractor for the Macy building, entered into a contract dated September 18, 1972 with Arc whereby Arc agreed to perform all electrical work and install the electrical fixtures for the building. On November 6, 1972, Arc issued a purchase order to Vega to supply some of the electrical fixtures which Arc needed to perform the contract.
Subsequently, Vega set out to purchase electrical fixtures as specified by the architect from various manufacturers, one such manufacturer being Robert. The facts show that Robert *252 assembles and manufactures electrical fixtures whereas Vega merely purchases fixtures pursuant to order. Robert submitted specifications to Arc which were initially rejected though the resubmittals brought in by Robert were ultimately approved. Vega issued two purchase orders to Robert for which the approval had been given and delivery was made directly to Arc at the job site. Vega defaulted on paying for the second shipment of fixtures and Robert filed a mechanic’s lien in the amount of $6,763.10 which is the subject matter of the first action.
In the second action, Hempstead Bank, as Vega’s assignee, commenced an action against Arc for moneys due and owing in the amount of $15,711.60. Arc’s counterclaim alleges that Vega breached the contract wherein Vega had agreed to deliver to Arc electrical fixtures. Arc “covered” Vega’s alleged breach at a cost of $589.53. The main claim of Hempstead Bank against Arc has been disposed of and the sum of $7,622.07 remains on deposit with this court pending the disposition of the actions herein.
Turning to the action commenced by Robert, section 3 of the Lien Law provides in pertinent part that “a contractor, subcontractor, laborer, materialman * * * who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor, shall have a lien * * * upon the real property improved”. Subdivision 12 of section 2 of the Lien Law defines “materialman” as “any person who furnishes material or the use of machinery, tools, or equipment, or compressed gases * * * either to an owner, contractor or subcontractor, for, or in the prosecution of such improvement.” The issue presented herein is whether Robert is a materialman within the meaning of the aforesaid definition.
There is a dearth of authority dealing with a factual situation as presented herein. In the instant case, while Robert contracted with Vega, it did obtain the approval of Arc before manufacturing the fixtures and delivering same to Arc at the job site. Vega did not in any way construct or manufacture the fixtures nor did it even inventory fixtures. Vega merely ascertained Arc’s needs and acted as an agent or broker in obtaining the fixtures. Viewing the entire series of transactions as a whole, it is manifest to this court that Robert was indeed a materialman within the purview of the Lien Law. This is not a case where a manufacturer supplies materials to *253 an assembler who in turn manufactures the item, but rather a case where a manufacturer submits specifications directly to the subcontractor, constructs the fixtures and delivers the finished product to the job site for installation. Under such circumstances, Robert in fact furnished the materials to the subcontractor.
The fact that title to the goods may have passed to Vega at Robert’s plant is inconsequential and the case relied upon by Hempstead Bank, Kingston Trust Co. v State of New York (57 Misc 2d 55), is inapposite as there the court was dealing with section 5 of the Lien Law which governs liens under contracts for public improvements. Section 23 of the Lien Law provides that "this article is to be construed liberally to secure the beneficial interests and purposes thereof’ (cf. Matter of Einach, 1 Misc 2d 537, 540). This court determines that in the furtherance of the purposes of the Lien Law, Robert, the manufacturer who actually constructed the fixtures that were installed in the Macy building should be entitled to file a mechanic’s lien for the work it performed. Accordingly, Robert is awarded the sum of $6,763.10 plus interest, said amount to be paid from the moneys on deposit with this court, and the balance paid over to the Hempstead Bank.
With respect to Arc’s counterclaim in the action instituted by Hempstead Bank, Arc issued a purchase order with Vega for electrical fixtures at the agreed price of $49,000. The parties additionally agreed on certain addition and deletion prices if Arc desired to modify the quantities of certain fixtures ordered. On April 30, 1973 and again on May 2, 1973, Vega notified Arc that it would not be able to complete the order and consequently, Arc ordered the fixtures from Avon Electrical Supplies at a price of $589.53 over the price agreed upon by Vega. Arc, in its counterclaim, seeks the above amount alleging that Vega breached the contract.
As noted above, Vega agreed to furnish the fixtures at a lump-sum price ($49,000) subject to additions or reductions as required by Arc. This was not a "unit-price” contract wherein Vega alleges it would have no liability for failure to deliver part of the order but rather it was clearly a lump-sum contract subject to Arc’s right to vary the quantities at agreed prices. When Vega repudiated the contract by notifying Arc that it could not complete shipment, Arc had the option to "cover” "by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase *254 goods in substitution for those due from the seller” (Uniform Commercial Code, §2-712, subd [1]; see, also, Uniform Commercial Code, § 2-610). Arc did precisely this by promptly ordering substitute goods from Avon Electrical Supplies and is therefore entitled to "the difference between the cost of cover and the contract price” (Uniform Commercial Code, § 2-712, subd [2]) — in this case, $589.53. Accordingly, Arc is entitled to judgment on its counterclaim in the amount of $589.53 with interest from April 30,1973.